This is an appeal by Mass. Appraisal Services, Inc., from a judgment and amendment thereto entered 29 August 1980 and 15 October 1980 respectively. The action was to resolve disputes arising out of a contract of 13 September 1972 between Bernard Carmichael and Hunnicutt Associates, Inc., defining those parties' respective rights, duties, obligations and compensation for the performance of anticipated mass reappraisal contracts with certain counties in the State of Alabama. We affirm
This is a very complex case which was greatly clarified by the approach taken to it on the part of the skilled and learned trial judge. The opinion of this court will, we think, be more readily understood if we set out in the opinion the pre-trial order (from which we omit the exhibit attached thereto). It reads as follows:
 PRE-TRIAL ORDER I. STIPULATED FACTS
This suit arises out of a September 13, 1972 contract (hereinafter "basic contract") between Bernard Carmichael (hereinafter "Carmichael") and Hunnicutt Associates, Inc.,*
(hereinafter "Hunnicutt") which defined the two parties' respective rights, duties, obligations and compensation for the performance of anticipated mass reappraisal contracts with Alabama counties
In anticipation of Carmichael's contracting with various Alabama counties to perform the mass reappraisal work required by Weissinger v. Boswell, 330 F. Supp. 615 *Page 668 
(M.D.Ala. 1971) and Act No. 160 of the 1971 Legislature, the parties Carmichael and Hunnicutt entered the basic contract
The evidence is in dispute as to which party drew the basic contract
Act 160 required each county of the State to reappraise all real property within the county. It further required the Department of Revenue of the State of Alabama to supervise and regulate the program of reappraisal of all real property in the State of Alabama by prescribing procedures and standards to accomplish the work to be done under the program. In early 1972, the Revenue Department of the State of Alabama issued such a statement of procedures and standards in the form of a PROPERTY APPRAISAL HANDBOOK. At Page 42 of the handbook is a "sample uniform contract" which the Department required the County Boards of Commissioners to use in contracting with the prime contractor for the work. Section II of the sample contract (pages 46-53 of the handbook) specifies the services to be performed by the prime contractor
The basic contract (the parties' September 13, 1972 Contract) contemplated Carmichael using this sample contract to contract with Alabama counties and for Carmichael then to sub-contract that portion of the work specified in the basic contract to Hunnicutt
The pertinent parts of the basic contract are:
 2. If Carmichael is successful in receiving a contract with the State of Alabama . . . he will enter into a written contract with the State of Alabama or its subdivisions in his own name whereby Hunnicutt will perform the original mass appraisal services bid upon for the previously quoted bid amount
 3. Carmichael will communicate all bids to the State of Alabama or its subdivisions and will act as liaison during the contract term and including through the acceptance by the State of Alabama or its subdivisions of work required under the contract, will make all State and local contracts, will act as consultant as is more fully set out in paragraph 4 below, and will attend all formal hearings necessitated by the laws and revenue rulings of the State of Alabama or its subdivisions
 6. For each transaction wherein Carmichael is the "contractor" and Hunnicutt the "subcontractor," Hunnicutt shall furnish, at its own expense, a performance bond or bonds in favor of the State of Alabama or its subdivisions and in favor of Carmichael as well, in such amounts as will fully protect them from any and all losses under the contract
 7. Hunnicutt shall, as subcontractor, make all appraisals called for by the said contract and furnish to the State of Alabama or its subdivisions, on forms suitable therefor, all data and information required thereunder, all to be done in accordance with the terms and provisions of the Property Appraisal Handbook of the State of Alabama, with the appraisal manual of the State of Alabama and any supplements thereto or revisions thereof, and in accordance with any and all laws, revenue rulings, and directives appertaining thereto, whether the same are now in existence or not
 12. Hunnicutt further agrees to indemnify and hold Carmichael harmless from any and all actions, suits, or claims which may be brought against Carmichael because of any appraisal or other work or service performed hereunder by any person other than Carmichael whether arising in tort or contract, and whether the same shall have merit or not
 13. Carmichael further agrees to indemnify and hold Hunnicutt harmless from any and all actions, suits, or claims which may be brought against Hunnicutt because of any appraisal or other work or service performed solely by Carmichael whether arising in tort or contract, and whether the same shall have merit or not
 14. Nothing herein contained shall be construed to place the parties in the relationship of partnership or joint venture, and neither party hereto shall have the power to obligate or bind the other except *Page 669 
as the same may be hereinafter contracted by and between the parties hereto
 15. This agreement represents the entire understanding of the parties, and there are no representations, promises, warranties, covenants, or other understandings or undertakings, oral or written, except those contained in this agreement Should any sentence, paragraph, clause, or combination of the same be held unenforceable or in conflict with the law in this jurisdiction, the validity of the remaining parts or provisions shall not be affected by such holding. It is the intention of both parties that this agreement shall be binding only to the extent that it may be lawful under state and federal law
 18. This agreement can be modified only by an instrument in writing signed by both parties
 19. This agreement is made and entered into in the State of Alabama and is made in contemplation of the laws thereof and shall be construed in accordance with such laws
 (Enumeration of these clauses does not preclude consideration of other clauses in the contract insofar as they may be applicable to any other contentions of the parties.)
Subsequent to the basic contract, Carmichael submitted bids (based upon bids supplied by Hunnicutt) to several Alabama counties. On the basis of those bids, Carmichael contracted (using the sample contract) with the Coffee, Macon, DeKalb, Calhoun and Henry County Board of Commissioners to reappraise real properties in these counties. Each of these contracts (hereinafter referred to as the county contracts) was solely between Carmichael and the respective county and there is no reference to Hunnicutt in these contracts. These five county contracts which are, for all purposes germane to these suits, virtually identical, provide, inter alia:
 "The company shall furnish without additional charge a competent representative of the company to appear at all formal hearings before the county Board of Equalization upon the assessed values based on the reappraisal. In the event of appeal to the courts a company representative will, without additional costs to the County, be present at the hearings to testify as a witness, to outline the steps taken in the appraisal or reappraisal of the real property, and to give his opinion as to the value of the property involved in the court action. . . ."
The Board of Equalization afforded property owners an opportunity to object to the amount of the appraisal or assessment or to point out alleged errors in the appraisal of their property
Prior to the Board of Equalization hearings in each of the five counties, informal hearings were held as required by the county contracts at which the property owners in the respective counties were given an opportunity to review the appraisals of their property and point out alleged errors in those appraisals. Property owners were mailed notices of these hearings prior to their being held. Notices included, among other things, the time, date and place of the hearings, the appraised value of the owner's property, and a legal description of the owner's property, including acreage and/or lot, block and subdivision name. These information hearings were attended by Hunnicutt personnel
Subsequent to Carmichael's contracting with the five Alabama counties, Carmichael and Hunnicutt entered contracts (hereinafter referred to as the county subcontracts) which provide:
 "Hunnicutt Associates, Inc. will fully perform that certain agreement between . . . County, Alabama and Bernard Carmichael, dated . . . to the extent and in the manner required of it under the terms of its contract with Bernard Carmichael, dated September 13, 1972
 Hunnicutt Associates, Inc. agrees to hold Bernard Carmichael harmless from any and all claims, suits, judgments, awards and penalties . . . which may arise out of the performance by Hunnicutt Associates, Inc, of its obligation hereunder." *Page 670 
 "For the same consideration, Bernard Carmichael agrees to do and perform all of the obligations set out in his contract with Hunnicutt Associates, Inc dated September 13, 1972."
 (Enumeration of these clauses does not preclude consideration of other clauses in the contract insofar as they may be applicable to any other contentions of the parties.)
The subcontracts were drawn by the law firm of Jones, Murray, Stewart Yarbrough, acting as counsel for Bernard Carmichael As with the county contracts, the subcontracts are identical
This suit was filed by Hunnicutt after a dispute arose between Carmichael and Hunnicutt as to which party had responsibility to provide or pay a representative to attend Board of Equalization hearings in the five Alabama counties with which Carmichael had contracted
Payments from the counties have been placed in escrow by Carmichael pending a decision in this case. Cost of the Board of Equalization hearings in the amount of $78,271.26 have been paid from the escrow account
The parties have agreed on an accounting of all receipts and expenditures under the contracts and a computation of interest to August 25, 1980. It is attached as Exhibit A. The accounting assumes that payments from Macon County and from DeKalb County have been received
 II. ISSUES OF FACT
1. Whether Carmichael or Hunnicutt drafted the basic contract
2. The quality of work performed by Hunnicutt is not an issue
 III. ISSUES OF LAW
1. Whether the contracts are ambiguous
2. Which party under the terms of the basic contract, county contracts, and county subcontracts has the duty to provide or pay a competent representative to attend the Board of Equalization hearings in the five counties
3. Do the hold-harmless agreements of the contracts include either [party's] attorney's fees and costs incurred in this suit?
 VII. ACCOUNTING
The parties stipulate, based on the computations of Exhibit A attached hereto and incorporated herein, that:
(1) Should the court rule that Hunnicutt had the duty or responsibility to provide or pay a representative to attend the Board of Equalization hearings in the five counties, judgment against Carmichael and in favor of Mass. Appraisal Services, Inc. should enter for:
 (a) The sum of $188,619.62 plus the sum of $72,947.28 when collected by Carmichael from Macon County and the sum of $6,808.18 when collected by Carmichael from DeKalb County
 (b) All certificate of deposit and passbook savings account interest accrued or accruing on sums collected from the five counties and held by Carmichael
 (c) Interest from the date of trial until entry of judgment at the rate of $9.18 per day
(2) Should the court rule that Carmichael had the duty or responsibility to provide or pay a representative to attend the Board of Equalization hearings in the five counties, judgment against Carmichael and in favor of Mass. Appraisal Services, Inc. should enter for:
 (a) The sum of $284,615,93 plus the sum of $72,947.28 when collected by Carmichael from Macon County and the sum of $6,808.18 when collected by Carmichael from DeKalb County
 (b) All certificate of deposit and passbook savings account interest accrued or accruing on sums collected from the five counties and held by Carmichael
 (c) Interest from the date of trial until entry of judgment at a rate of $21.77 per day
The parties agree and stipulate that regardless of which of the two accountings *Page 671 
the court enters, in the event that less than $72,947.28 is collected from Macon County and/or that less than $6,808.18 is collected from DeKalb County, this court shall retain jurisdiction of this action to hear and determine the relative rights and duties of the present and any future added parties regarding the collection of these sums from Macon and DeKalb Counties and any other matters relating hereto
After considering the testimony of twelve witnesses and forty-four items of documentary evidence, both the testimony and the exhibits being quite voluminous, and without the aid of a jury, the trial court entered the following amended judgment which contains the findings and conclusions about which Mass. Appraisal complains:
AMENDED ORDER
 This matter coming on for hearing is submitted on the testimony, exhibits and stipulations of both parties. The Court has also had the benefit of argument of able counsel. Based upon the material evidence the Court is of the opinion and finds:
 1. That the Contract of September 13, 1972, between Bernard Carmichael and Hunnicutt Associates, Inc was probably initiated by Carmichael; however, the Contract passed back and forth several times so that each of the parties had an equal opportunity to consider and amend its terms with the result that they were mutually agreed upon
 2. That the language contained in Paragraph 3 of this Contract is not on its face ambiguous, but when considered in the light of the different interpretations of the parties, the wording of the Contract between Bernard Carmichael and the Counties and the Supplemental Contract between Carmichael and Hunnicutt Associates, Inc. for each county, there is sufficient ambiguity for the Court to consider all of the surrounding circumstances relating to the making and carrying out of this series of Contracts
 3. That the wording of Paragraph 3 of the Contract required Carmichael to attend hearings of the Board of Equalization, but his duty did not extend beyond attending
 4. Under the Contract documents, Hunnicutt 
Associates, Inc. had the duty to staff the Boards of Equalization hearings or to pay the costs of staffing such hearings. The parties have stipulated that Bernard Carmichael has paid out of escrowed funds the sum of $78,271.26 as the partial cost of discharging this duty
 4. That the parties in their Pre-Trial Order have stipulated the amount of judgment, including interest, to be entered in the event of finding for either party
 5. That the Defendant Carmichael is not entitled to recover attorney's fees under the provisions of the Contract of September 13, 1972
 6. That the Defendant is entitled to be reimbursed for costs of staffing the hearings of the Boards of Equalization in the amount of $78,271.26
 It is therefore, CONSIDERED, ORDERED, ADJUDGED and DECREED by the Court that:
 1. That Hunnicutt is entitled to be paid from sums held by Carmichael in escrow:
 (a) The sum of $188,619.62 plus the sum of $72,947.28 when collected by Carmichael from Macon County and the sum of $6,808.18 when collected by Carmichael from DeKalb County
 (b) All certificate of deposit and passbook savings account interest accrued or accruing on sums collected from the five counties and held by Carmichael
 (c) Interest from August 25, 1980 to date of Decree dated August 29, 1980, at the rate of $9.18 per day
 2. That the Court shall retain jurisdiction of this action to hear and determine the relative rights and duties of the present and future added parties regarding the collection of any amount due from Macon County and DeKalb County and any other matters relating hereto
 3. That all costs in this action be and the same are hereby taxed against the *Page 672 
Plaintiff [Mass. Appraisal Services, Inc.] for which let execution issue
On appeal, Mass. Appraisal states the issues to be:
 (a) Is the September 13, 1972 contract ambiguous on the issue of which party was responsible for furnishing a competent representative at the formal hearings of Boards of Equalization in five Alabama counties?
 (b) Did the trial court err in admitting extrinsic evidence to determine whether that contract was ambiguous?
 (c) Did the trial court err in admitting testimony from a third party regarding how he and his subcontractor interpreted their totally different contract, such testimony being considered in construing the instant parties' contract?
 (d) Did the trial court err in interpreting the September 13, 1972 contract to require Hunnicutt/Mass. Appraisal Services, Inc. to furnish a competent representative at the formal hearings at the Boards of Equalization in five Alabama counties?
As is readily apparent the focus of this appeal is on the primary question of whether the trial court erred when it found that the language contained in paragraph three of the contract of 13 September 1972 was ambiguous when considered in light of extrinsic evidence although not ambiguous on its face
Able counsel for both parties have filed excellent briefs and made cogent and persuasive oral arguments, citing a plethora of authorities in support of their respective positions. However, reduced to its essentials, the judgment below stands or falls upon the determination of the answer to one single question: Did the trial court commit reversible error in holding there was no facial ambiguity in the terms of paragraphs three and seven of the 13 September 1972 contract, but were ambiguous when considered in light of extrinsic matters?
Mass. Appraisal insists that once the trial court determined that no facial ambiguity was present in the basic contract, it could not proceed to examine extrinsic evidence. Indeed, this is the general rule regarding construction of contracts. Camp vMilam, 291 Ala. 12, 377 So.2d 95 (1973)
However, it is the exception to this general rule, which neither party to this appeal has briefed or argued, that is crucial to the resolution of this case. This exception pertains to what is known as a "latent ambiguity," which was defined inGibson v. Anderson, 265 Ala. 553, 92 So.2d 692 (1957), as follows:
. . . It is said that "a latent ambiguity arises when the writing on its face appears clear and unambiguous, but there is some collateral matter which makes the meaning uncertain", 32 C.J.S., Evidence, § 961b, p. 915; "that is, an uncertainty which does not appear on the face of the instrument, but which is shown to exist for the first time by matter outside the writing", 20 Am.Jur., Evidence, § 1157, p. 1010. And it is well established that parol or other extrinsic evidence is admissible to explain or clarify a latent ambiguity. Kimbrough v Dickinson, 247 Ala. 324, 24 So.2d 424, 426; Reichert v. Jerome H. Sheip, Inc., 206 Ala. 648, 652, 91 So 618; Pieme v. Arata, 202 Ala. 427, 428, 80 So. 811; Reynolds v. Trawick, 197 Ala. 165, 167, 72 So. 378; Garrow v. Toxey, 188 Ala. 572 (2), 66 So. 443; Hereford v. Hereford, 131 Ala. 573, 576, 32 So. 620; Guilmartin v. Wood, 76 Ala. 204, 209; Chambers v Ringstaff, 69 Ala. 140, 143-145; 20 Am.Jur., Evidence, § 1157, p. 1010; 32 C.J.S., Evidence, § 961, pp. 915-918
Although Mass. Appraisal argues against the admission of extrinsic evidence to aid interpretation, the language of the basic contract, standing alone, does not clearly obligate Carmichael to pay the cost of other persons attending hearings A literal reading of the text simply mandates that Carmichael be present at all required hearings, while obligating Hunnicutt to furnish all data and information required by the state
The provisions which impose these duties, however, must be read in light of all other *Page 673 
relevant provisions in the contract. In construing a similar mass reappraisal contract in this state, the three-judge panel in Green v. Russell County, 603 F.2d 571 (5th Cir. 1979), observed:
. . . We note that the Alabama Supreme Court has recently reiterated that state's position that in reviewing contracts, courts are to "accord them a reasonable construction under the terms used by the parties who made them, and when the contracts contain several provisions, all are construed together so that a harmonious operation can be given to each provision as far as the language used will permit." United States Fidelity Guaranty Co. v. Jacksonville State University, 357 So.2d 952 (Ala. 1978). . .
Paragraph two of the basic contract provides that "[i]f Carmichael is successful in receiving a contract with the State of Alabama . . . Hunnicutt will perform the original mass appraisal services bid upon. . . ." In order to determine the services to which paragraph two refers, obviously it is necessary to inspect Carmichael's contracts with the counties which embody the terms bid upon
As evidenced by the pertinent provision of these contracts quoted in the pretrial order, supra, the counties required the presence at the hearings of a witness who could testify to the actual steps taken in the appraisal process; also, one who could give an opinion of the value of the property appraised
This requirement was made abundantly clear in a letter to Carmichael from Carrol Stough, Valuations Supervisor of the Ad Valorem Tax Division of the State, which said:
 It is absolutely essential that a representative of Hunnicutt Associates be present during the hearings of property owners with the Board of Equalization. It is necessary that a representative be present who is knowledgeable with appraisal procedures in the County and of the property in general. It will also be necessary that a representative knowledgeable in mapping be present to discuss mapping boundaries
The parties do not dispute the fact that a Hunnicutt representative was required to attend the hearings
Whether a contract is ambiguous is a question of law for the trial court. Holt v. Davidson, 388 So.2d 548 (Ala. 1980); MilesCollege, Inc. v. Oliver, 382 So.2d 510 (Ala. 1980). The court properly afforded Carmichael the opportunity to show that collateral documents, specifically Carmichael's contracts with the counties and the letter from Stough, created a latent ambiguity in the basic contract. Furthermore, in light of the fact that the contract terms do not clearly allocate the burden of paying the costs of attendance at the hearings by Hunnicutt's representatives, the trial court properly determined that paragraphs three and seven were ambiguous as a matter of law
Once the court concludes the instrument is ambiguous or uncertain in any respect, determination of the true meaning of the contract is a question for the factfinder, in this case the trial court, and the surrounding circumstances, including the construction placed on the language by the parties, are taken into consideration in order to ascertain the intention of the parties. City of Montgomery v. Maull, 344 So.2d 492 (Ala 1977); Miles College, Inc. v. Oliver, 382 So.2d 510 (Ala 1980)
In light of the fact the evidence in this case was adduced ore tenus, the findings of fact by the trial court made after a determination that ambiguity existed as a matter of law, are to be accorded a heavy presumption of validity, and they will not be disturbed unless palpably erroneous. Ford v. AlabamaBy-Products Corp., 392 So.2d 217 (Ala. 1980)
Mass. Appraisal contends, however, that evidence relied upon by the trial court included inadmissible testimony. The evidence complained of was certain testimony of John E. Green, an individual who, as a prime contractor, had entered into a mass appraisal contract similar to the one between Carmichael and Hunnicutt *Page 674 
The dealings between Green and his subcontractor were unrelated to the transaction between the parties to this action. Nevertheless, the court permitted Green to testify, over Mass. Appraisal's objection, regarding how Green and his subcontractor interpreted their contract; specifically provisions relating to representation at Boards of Equalization hearings
Mass. Appraisal objected to this testimony, citing Loftin'sRent-All, Inc. v. Universal Petroleum, 344 So.2d 781
(Ala.Civ.App. 1977), particularly for its statement of the rule of res inter alios acta. That rule excludes evidence of acts, declarations, and dealings between those not parties to the action. From the Latin: Events or things between others
We are of the opinion the trial court committed error in allowing Green's testimony regarding his unrelated contract. No inference which may be found from the interpretation of the parties to a collateral contract can be accepted as shedding light on the intention of the parties when executing or performing the contract in dispute between the parties to this action. However, we cannot find that reversible error resulted from admission of this testimony
There is substantial evidence of record, exclusive of Green's testimony about this collateral contract, to support the trial court's conclusions from its findings of fact regarding the contract in dispute here. Much of this evidence came from testimony by Green as an expert on matters other than about his contract
The record reveals that Green was instrumental in organizing, on behalf of the Department of Revenue, the state's mass reappraisal program, under, and according to which, Carmichael and Hunnicutt entered into their contract. Additionally, Green wrote the appraisal manual by the terms of which all contractors and subcontractors in the program were required to operate. He also acted as an advisor to the Department of Revenue throughout the mass reappraisal program. Based on these qualifications, in addition to an extensive educational, publishing, and work background in the appraisal profession, Green testified it was the responsibility of the subcontractor
who did the actual appraisal work to staff the Board of Equalization hearings and he knew of no prime contractor involved in the program who had assumed that responsibility
We have also considered Stough's letter requiring attendance at Boards of Equalization hearings by a Hunnicutt representative in light of Hunnicutt's stated obligation under paragraph seven of the basic contract to furnish the state and counties with all information required by the state in compliance with its property appraisal handbook and appraisal manual, "and in accordance with any . . . directivesappertaining thereto, whether the same are now in existence ornot."
Considering this evidence together with the evidence of record in its entirety, which we have carefully examined, we must conclude that the trial court's admission of Green's testimony concerning his own mass appraisal contract with an unrelated party was error without injury which does not warrant reversal because we find no substantial rights of appellant were injuriously affected. Rule 45, ARAP
Furthermore, we detect no palpable error or manifest injustice in the trial court's findings that the expense of staffing the Board of Equalization hearings was an obligation of Hunnicutt, subsequently Mass. Appraisal, under the basic contract. Applying the ore tenus rule, the judgment is due to be and is hereby affirmed
AFFIRMED
FAULKNER, JONES, ALMON and ADAMS, JJ., concur
* Hunnicutt's assets, including its name were sold on August 26, 1978 to Robert Kimball Associates. Mass. Appraisal Services, Inc., a wholly owned subsidiary of Equifax, Inc., was incorporated at approximately the same time and assumed all of Hunnicutt's rights and duties under the contracts involved in this suit. Hunnicutt, prior to the sale of its assets, and Mass. Appraisal Services, Inc., after that sale, have the same rights and duties under the contracts involved in this suit and are, for all purposes now germane to this suit, the same entity. *Page 675