BRADLEY, Judge.
This is a breach of contract case.
The plaintiff, Diane S. Cannon, was employed by the defendant, Creative Leasing, Inc., from November 1981 until May 1984. From the beginning of her employment until March 2, 1983 the plaintiff worked pursuant to an oral employment contract. In March 1983 the defendant’s general manager, Mr. Milton Palmer, presented a written employment contract to the plaintiff for her to review and sign. The evidence shows that the plaintiff kept and reviewed the contract for about two weeks before signing it and returning it to the defendant.
In her capacity as one of the defendant’s salespersons, the plaintiff’s principal duty was to lease automobiles to the general public. Under the plaintiff's original oral employment contract, she was guaranteed the greater of $750 per month or the amount of the commissions she earned during that particular month. The record reveals that, in order to bring the plaintiff’s salary and commissions in line with customer rental payments, the defendant devised the written employment contract. The written employment contract stipulated that rather than paying the entire amount of a particular lease, as it had under the oral employment contract, the defendant would pay the plaintiff’s commissions over the life of the lease.
The plaintiff worked under the new compensation arrangement embodied in the written employment contract from March 2, 1983 until May 30, 1984, when she voluntarily terminated her employment with the defendant. After quitting, the plaintiff claimed the defendant owed her $8,355.92 for commissions earned during her employment and that the commissions accrued between May 30,1984 and September 1985. The defendant refused to pay any commissions, contending that its obligation to pay any commissions earned during the course of employment terminated when the plaintiff left the company.
Unable to procure payment of the commissions, the plaintiff filed suit, alleging the defendant breached the written employment contract. The case was tried on September 20, 1985 in the Circuit Court of Tuscaloosa County, Alabama. At issue was whether the written employment contract obligated the defendant to pay the commissions after the plaintiff terminated her employment with the defendant. The trial court, sitting without a jury, held that the defendant breached the contract and awarded damages to the plaintiff in the amount of $8,355.92. From this judgment the defendant appeals.
The defendant’s first contention is that the written contract was unambiguous on its face, and, therefore, the trial court erred in allowing the admission of parol evidence to explain the parties’ intent. The plaintiff, on the other hand, says the contract was ambiguous with respect to whether commissions earned during the course of employment were payable after termination. Thus, the plaintiff contends that parol testimony was properly admitted.
In support of its contention that the contract is unambiguous, the defendant asserts that the employment contract “contains no provisions even suggesting that a salesperson or employee would receive any salary or commission after termination of the [employment] contract.” The defendant also says the contract’s reference to commissions payable only to one who is “an employee” evidences the parties’ unambiguous intent that commissions were not to be paid after the termination of one’s employment.
Whether a contract is ambiguous is a question of law to be decided by the trial court. Franklin v. Jones, 466 So.2d 96 (Ala.1985).
In the case at bar, the contract expressly provides that commissions are to be paid to “an employee.” This language could lead one to believe that commissions were payable only during a salesperson's employment, and that the commission pay *81 ments terminated upon termination of employment. However, the written contract was implemented in order to change the defendant’s compensation plan from one in which commissions were payable at the time the auto leases were entered into to one in which commissions were payable over the life of the lease. Also, there is a provision which expressly determines an employee’s compensation if the employer terminates the contract, but no such provision to disclose the disposition of commissions earned by an employee who voluntarily terminates his or her employment prior to the expiration of leases still outstanding. Thus, an ambiguity clearly exists in the contract’s terms relating to the payment of commissions after an employee voluntarily terminates his or her employment.
Once a court decides that a contract is ambiguous, the determination of its meaning is for the factfinder, the trial court in this case. Miles College, Inc. v. Oliver, 382 So.2d 510 (Ala.1980). All of the circumstances leading to the agreement, including the interpretation placed on the language of the parties, are to be considered in ascertaining the intention of the parties. Hartford Accident v. Morgan County Association, 454 So.2d 960 (Ala.1984). And, where the evidence is received ore tenus, the findings of fact by the trial court after a determination that ambiguity exists in the contract are to be accorded a heavy presumption of correctness, and they will not be disturbed unless palpably wrong. Ford v. Alabama By-Products Corp., 392 So.2d 217 (Ala.1980).
In the instant case there is evidence from which the trial court could conclude that the parties intended commissions earned during the course of employment to be payable after termination. The defendant offered evidence suggesting that the commissions were to be paid over the life of the lease partly because of the employee’s continuing obligation to provide various services to the auto lessee. Since the salesperson could not provide these services if he or she were not employed, defendant contends that the commissions should not be paid after the employee terminates his or her employment. The record, however, reveals that the commissions would be paid regardless of the number of complaints handled by the salesperson. Furthermore, the evidence shows that the amount of a salesperson’s earned commissions depended upon the number of leases sold rather than the number of customer complaints handled. From this evidence the trial court could have reasonably determined that commissions were paid primarily as an incentive to lease automobiles, and that the salesperson’s duty to service leases was merely a collateral duty unrelated to compensation. The trial court also could have reasonably determined that since compensation was based only upon the number of leases sold and that such compensation would be paid over the life of the lease the parties intended the commissions to be payable even after the plaintiff stopped working for the defendant. Therefore, sufficient evidence existed from which the trial court could conclude that the parties intended for commissions to be payable after termination of employment. See, Mass Appraisal Services, Inc. v. Carmichael, 404 So.2d 666 (Ala.1981).
The defendant also argues that the trial court erred in refusing to admit the testimony of other salespersons. The defendant asserts that the testimony would have established that other salespersons were told that commissions earned during employment would not be paid after termination of their employment. The defendant argues the testimony was admissible either to prove business custom or usage or to impeach the plaintiff’s testimony.
We find no error in the refusal of the trial court to admit the testimony in question, because the record fails to show that the defendant made a sufficient offer of proof pursuant to Rule 43(c), Alabama Rules of Civil Procedure. Hartford Insurance Group v. State Farm Mutual Automobile Insurance Co., 372 So.2d 1303 (Ala.1979). The record reveals that the defendant’s attorneys apprised the trial court of the testimony they hoped to elicit from the *82 other salespersons, and, in response, the trial court said that the witnesses could be called and questioned but that he failed to see the materiality of the testimony. The defendant’s attorneys never attempted to put the witnesses on the stand and question them, even though the court expressly stated that it was not denying counsel the opportunity to call the witnesses.
“While recognizing that the better practice is to put the witness on the stand, it is competent, it has been held, for the trial court, with consent of opposing counsel, to rule on an offer without calling the witness. Where the court rules that it will not hear [the party’s] witnesses, he need not produce each of them before the court.”
64 C.J. 131 (1933), cited in Redwine v. State, 258 Ala. 196, 61 So.2d 724 (1952) (footnotes omitted) (emphasis added). See also, C. Gamble, McElroy’s Alabama Evidence § 425.01(3) (3d ed.1977).
The Committee Comments to Rule 43(c), A.R.Civ.P., provide that: “Rule 43(c) simply gives a party a right to place in the record for appellate purposes, the proof he was denied the opportunity to adduce at the trial level after the objection has been sustained against him.”
In the case sub judice the defendant did not call and question any witnesses about the proof he said he wanted to offer, nor did the trial court prevent the defendant from calling any such witnesses. In fact, the trial court told the defendant that the witnesses could be called and questioned. Moreover, opposing counsel objected to the offer of testimony.
Based on the above, the trial court did not err in refusing to consider the proffered testimony.
For the foregoing reasons, the trial court’s rulings with respect to the contract’s ambiguity, the admissibility of parol evidence to clarify the ambiguity, and the inadmissibility of the defendant’s proffered evidence are not infected with reversible error. Consequently, the judgment of the trial court is affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.