I respectfully dissent.
The language of the written settlement agreement is clear on its face. I agree with the majority that no patent ambiguity exists as to the agreement. Because, however, I find the agreement to contain a latent ambiguity, I must dissent.
A latent ambiguity arises when the writing is clear and unambiguous on its face, but some collateral matter makes the meaning uncertain. Mass. Appraisal Services, Inc. v.Carmichael, 404 So.2d 666 (Ala. 1981). Where a latent ambiguity exists, the trial court, as the court in this case, may admit parol evidence to explain or clarify the latent ambiguity. Carmichael, 404 So.2d 666.
In this case the plaintiffs' insurance coverage, referred to as "the Plan" in the settlement agreement, did not cover Laura Beck's care and treatment in The Institute of Living because it is a specialty psychiatric facility rather than a general hospital. The Plan provided coverage for care for mental nervous disorders only if it was rendered in a general hospital.
Nevertheless, in the settlement agreement Blue Cross agreed to pay for Laura Beck's care and treatment in The Institute of Living through a certain date, in effect treating that facility as a general hospital. Put another way, Blue Cross agreed temporarily to waive the Plan's exclusion of coverage for care and treatment for mental and nervous disorders that are rendered at specialty psychiatric facilities.
The heart of this agreement is embodied in the following language in the settlement agreement:
 "It is understood that the provision of benefits for her confinement and treatment at The Institute of Living shall be subject to all the conditions and limitations of the Plan . . . other than the exclusion from major medical coverage of inpatient care and treatment for mental and nervous disorders in a facility other than a general hospital." (Emphasis supplied.)
While this language appears to be clear on its face, it contains a latent ambiguity with regard to an extraneous matter — the question of who is responsible for the payment of charges for care rendered to Laura Beck in The Institute of Living by psychiatric technicians. The ambiguity exists because the Plan apparently does not cover nursing care rendered by persons other than registered nurses or licensed practical nurses.
In my opinion the trial court properly admitted parol evidence to explain the latent ambiguity in the parties' settlement agreement regarding the payment for care and treatment rendered by psychiatric technicians. It is also my opinion that the learned trial court correctly resolved the ambiguity by finding that the intent of the parties was that Blue Cross would pay for such care.
While the Plan does not provide coverage for special nursing care that is rendered by persons other than registered nurses and licensed practical nurses, just as it does not provide coverage for mental care and treatment in a facility other than a general hospital, Blue Cross expressly agreed to waive the latter exclusion in this case to recognize coverage for care rendered Laura Beck in a specialty psychiatric facility. That facility, The Institute for Living, provided mental care and treatment to Laura Beck by psychiatric technicians rather than registered nurses or licensed practical nurses because the latter are not needed or used for such mental care and treatment as was required by Laura Beck.
In my opinion the trial court correctly interpreted the language of the settlement agreement to mean that, in agreeing to cover Laura Beck's care and treatment in The Institute for Living, a specialty psychiatric facility which was obviously not providing her with medical nursing care by registered nurses or licensed practical nurses, Blue Cross agreed to pay for the psychiatric nursing care rendered to her by psychiatric technicians in that facility. *Page 126