David Ross and Sadie Ross (lessees) entered into a lease agreement with Samuel Allen Martin (lessor). The lease involved property located in Monroe County, Alabama, on Highway 84 where the lessees operated a business known as David's Catfish House. The lease contained the following provision concerning the obligations for maintenance and repair:
 "MAINTENANCE: Lessees assume all responsibility for maintenance and repair of the premises and equipment and agree to keep the premises and all equipment in good condition and working order, normal wear and tear excepted."
Approximately 16 months later, the lessees and the lessor entered into an agreement in modification of the lease. For the purposes of this appeal, the pertinent portion of the modified agreement is as follows:
 "5. MAINTENANCE and REPAIRS: Tenant assumes the responsibility for general maintenance and upkeep of all the demised premises and equipment and furnishings, and agrees to keep same in good working order and condition, normal wear and tear excepted. Except, however, Landlord shall be responsible for the roof, walls and other structural members of the demised premises." (Emphasis added.)
Approximately two years after the lease was modified, the septic tank overflowed. The lessees reported the problem to the lessor and the State of Alabama Department of Public Health. According to the *Page 400 
lessees, the lessor made no effort to correct the problem at that time.
Soon after the septic tank overflowed, Jim Brooks, a public health environmentalist for the Monroe County Health Department, issued the lessees a notice of violation or a "seven day notice." Mr. Brooks told the lessees that if the problem was not corrected within seven days, then the food service permit for David's Catfish House would be pulled, and the restaurant would have to close. In response to the issuance of this citation, the lessor sent two men over to David's Catfish House, and the men drained some water from the back of that lot to the State Highway Department's ditch.
A couple of weeks later, Mr. Brooks issued the lessees a second notice of violation. Mr. Brooks informed the lessees that in order to satisfy the requirements of the State Health Department, they would have to connect their sewage line to the city sewer system or be closed down immediately. In order to attach their line to the city line, the lessees contacted the owners of the Huddle House, a building located on an adjoining piece of property. The owners agreed that the lessees could attach their line to the line of the Huddle House if they would compensate them for a portion of their costs in having their original line attached to the city's line. The lessees paid the owners of the Huddle House $3,990.42 so that they could hook on to their line. Additionally, the lessees paid Hall Plumbing, Wiring and Trenching $5,700 to run the sewage line from David's Catfish House to the Huddle House line.
The lessees filed a complaint for declaratory judgment. In this complaint, the lessees claimed that the lessor was responsible for the repair of the septic tank pursuant to the covenant to repair contained in paragraph five of the modified lease. This paragraph provides, in part, that "[the lessor] shall be responsible for the roof, walls, and other structural members of the demised premises." According to the lessees, since the lessor failed to repair the septic tank they effectuated the necessary repairs. After these repairs were completed, the lessees deducted the amount of the repairs from their rent. The lessor then gave notice to the lessees to quit the premises unless the rent was paid in full. The lessees requested in their complaint that the court declare that the lessor breached his covenant to repair and that they were therefore entitled to subtract the cost of repairs from their rent.
Later, the lessees filed an amended complaint for declaratory judgment. In this amended complaint, the lessees claimed that the septic tank was a "structural member" under the modified lease which the lessor was under an obligation to repair and maintain.
The lessor filed a motion for summary judgment, and the lessees filed a motion for partial summary judgment. The trial court denied the lessees' motion for partial summary judgment, finding that the term "structural member" was susceptible to interpretation. The trial court partially granted the lessor's motion for summary judgment, finding that the lessees were obligated to pay the lessor rent, pending the outcome of the suit.
The trial court conducted a nonjury trial. At the conclusion of the trial, the trial court found that the term "structural members" was ambiguous, but held, however, that "from a fair consideration of the testimony the court is convinced that said term would include repair or replacement of the sewer system at the time the lease was made." The trial court also determined that the replacement of the septic tank system was mandated by the State Board of Health, a public authority. The trial court stated that, "[w]hile there is no Alabama case directly on point, the majority rule in the United States is that where repairs are ordered by public authorities, the landlord is responsible for the costs of those repairs." The trial court then entered judgment in favor of the lessees in the amount of $9,630 plus costs.
The lessor filed a motion to revise and amend judgment. In this motion, the lessor maintained that the trial court failed to mitigate its award of damages, contending that the lessees had received a financial *Page 401 
benefit from the new sewer system. The trial court denied this motion, and the lessor appeals.
This court must first decide if the trial court erred in finding the term "other structural members" to be ambiguous and subject to judicial interpretation. The lessor argues that the trial court cannot create a contractual term not mutually agreed upon by the parties; that the lessor had no duty to repair the leased premises; that the law of Alabama does not impose upon a landlord expenses for repairs on leased premises mandated by public health authorities; and that the lessees' monetary recovery is due to be reduced because the lessees' new restaurant, immediately adjacent to the leased premises, benefits from the sewer line installed for the leased premises.
Our supreme court stated in Mass. Appraisal Services, Inc.v. Carmichael, 404 So.2d 666, 673 (Ala. 1981), that "[w]hether a contract is ambiguous is a question of law for the trial court." In this case, the trial court determined that the term "structural members" was ambiguous. In Files v.Variety Wholesalers, Inc., 554 So.2d 1068 (Ala.Civ.App. 1989), this court held that "[a]n ambiguity exists when the instrument is reasonably susceptible to more than one meaning. The writing is unambiguous if only one reasonable meaning clearly emerges." Files at 1069 (citation omitted). The modified agreement provided in paragraph five under the heading "MAINTENANCE AND REPAIR" that the "[l]andlord shall be responsible for the roof, walls, and other structural members of the demised premises." Neither party to this appeal cites this court to any authority defining the term "other structural members." From the record evidence before the trial court, we cannot conclude that only one reasonable meaning clearly emerges from the term. Consequently, we cannot hold that the trial court erred in finding the term to be ambiguous and subject to judicial interpretation.
In Carmichael, our supreme court held that "[o]nce the court concludes the instrument is ambiguous or uncertain in any respect, determination of the true meaning of the contract is a question for the factfinder." Carmichael at 673 (citations omitted). After the factfinder, in this case the trial court, conducted an ore tenus proceeding, it found that the term "structural members" included the sewage system. In considering the weight an appellate court should accord such a finding, our supreme court has held:
 "In light of the fact the evidence in this case was adduced ore tenus, the findings of fact by the trial court made after a determination that ambiguity existed as a matter of law, are to be accorded a heavy presumption of validity, and they will not be disturbed unless palpably erroneous."
Carmichael at 673 (citation omitted). Applying the aforementioned standard of review to this case, we cannot hold that the trial court's findings of fact were palpably erroneous, that is, that the sewage system was not within the scope of the term "structural members."
In Johnson v. Passmore, 581 So.2d 830 (Ala. 1991), our supreme court reaffirmed the general rule that "covenants to repair will not be implied, and the burden is on the tenant alleging the existence of such a covenant to prove its existence." Johnson at 832 (citations omitted). In this case, we find that the lessees met their burden of proof concerning the existence of a covenant to repair. Since the trial court determined that the term "structural members" encompassed the sewage system, the trial court did not err when it found that the lessor was under a duty to repair that system when it ceased to operate. Consequently, we need not address whether the law of Alabama imposes upon a landlord expenses for repairs on leased premises which are mandated by public health authorities. Regardless of the trial court's legal reasoning, if its judgment is nonetheless proper, that judgment will not be disturbed on appeal. State ex rel. Sokira v. Burr,580 So.2d 1340 (Ala. 1991).
The final issue before this court is whether the trial court erred in not reducing the monetary recovery of the lessees. The lessor claims that the award is due to *Page 402 
be reduced because the lessees now benefit from the expenditures made for the sewer line. The lessees contend that the building is now equipped with an adequate sewage disposal system from which the lessor will have permanent benefit long after the termination of the lease and that such would be the case whether the lessees moved next door or across town. From a review of the record, we cannot find any testimony or evidence presented to the trial court of any specific monetary benefits that the lessees derived from the installation of the sewer system to the leased premises. When a trial court's judgment is based on ore tenus evidence, a presumption of correctness attaches, and that judgment will be affirmed unless it is shown to be palpably wrong. Terry v. Terry,581 So.2d 1114 (Ala.Civ.App. 1991). In this case, we cannot find that the trial court erred in not granting a setoff against the lessees' award of damages or that the judgment is palpably wrong.
For the foregoing reasons, the judgment of the trial court is due to be affirmed.
AFFIRMED.
THIGPEN and RUSSELL, JJ., concur.