ROBERTSON, Presiding Judge.
Herb A. Sang entered into an employment contract with the Jefferson County Board of Education on July 17, 1989. The employment contract, as extended by agreement on June 30, 1990, provided that Sang was to be employed by the Board as superintendent of the Jefferson County schools until June 30, 1994.
On August 21, 1991, Sang and the Board agreed to amend the employment contract so as to shorten the term of Sang’s employment from June 30, 1994, to August 31, 1991. The amended contract provided that in consideration for Sang’s agreement to shorten the contract the Board would do the following:
“2. The Board shall pay to Sang, upon execution of this agreement, the sum of Three Hundred Fifty Thousand Dollars ($350,000). In addition thereto, the Board shall pay to Sang the sum of Five Thousand Six Hundred Fourteen and 08/100 ($5,614.08), which shall represent a payment in lieu of premiums for hospitalization insurance. In addition thereto, Sang shall be permitted the use of the automobile presently being furnished to him by the Board under the terms of the original contract for a period not to exceed sixty (60) days from the date of this agreement. The Board shall arrange for the packing and delivery of all items of personal property in Sang’s office to his home in Hoover, Alabama.”
The amended contract further provided:
“4. Sang shall and does hereby acknowledge and agree that the consideration described above shall operate to fully settle and discharge any and all of the Board’s obligations due him under any contract of employment between Sang and the Board, save and except the regular compensation and benefits which would be due Sang through August 31, 1991.”
On that same day, Sang received a check from the Board in the amount of $350,000 and two additional checks totalling $5,614.08. Thereafter, as part of the “regular compensation and benefits” due Sang under the amended contract, the Board paid the annual premium on Sang’s life insurance policy that had been due on August 28, 1991; paid the 8% of Sang’s annual salary earned through August 31, 1991, to a tax deferred annuity plan; and paid Sang’s share of the matching funds that had been paid into the Alabama Retirement System.
Subsequently, Sang contacted the Board, contending that under the amended contract, he was entitled to payment for his accrued but unused sick leave and vacation days as part of the regular compensation and benefits that he would be due as of August 31, 1991.
On August 30, 1991, the Board filed a declaratory judgment action in the Jefferson County Circuit Court, seeking a determination that, under the amended contract, it was not indebted to Sang for any accrued but unused sick leave and vacation days. On-October 11,1991, Sang answered the Board’s complaint and counterclaimed, demanding a judgment against the Board in the amount of $23,096.99 for all the accrued but unused sick leave and vacation days.
On October 23, 1992, Sang filed a motion for summary judgment. On November 19, 1992, the Board also moved for summary judgment. On January 6, 1993, the trial court entered an order denying Sang’s motion and holding that the phrase “regular compensation and benefits” was susceptible to more than one meaning and that the intention of the parties in regard to the termination agreement could be determined only by holding an evidentiary hearing.
Following an ore tenus proceeding on February 14, 1994, the trial court entered a judgment on March 9, 1994, in favor of the Board, holding that the Board was not obligated to separately compensate Sang for unused sick leave and vacation days pursuant to the phrase in provision four of the amended contract, “regular compensation and benefits which would be due Sang through August 31, 1991.”
*312 Sang appeals, raising three issues: (1) whether the contract term “regular compensation and benefits” is ambiguous; (2) whether the trial court created the alleged ambiguity by considering parol evidence before construing the plain language of the contract; (3)if the term is ambiguous, then whether the trial court erred in failing to construe the term against the Board, which drafted'the contract and upon which the contractual obligation rested.
Because Sang’s three issues relate to the trial court’s determination that the amended contract was ambiguous and subject to judicial interpretation, we address these issues together.
Whether a contract is ambiguous is a question of law for the trial court. Reeves Cedarhurst Dev. Corp. v. First Amfed Corp., 607 So.2d 184 (Ala.1992). An ambiguity exists when a contract term is reasonably susceptible to more than one meaning. Martin v. Ross, 608 So.2d 399 (Ala.Civ.App.1992). Further, a contract is unambiguous if only one reasonable meaning clearly emerges. Id.
In the original employment contract, provision nine addressed sick leave and vacation days and provided that upon the termination of the employment contract the Board would pay Sang for all accrued but unused sick leave and vacation days. Sick leave and vacation days were addressed only in provision nine and not in provision two, which addressed annual compensation; provision eight, which addressed additional compensation; provision eleven, entitled “Benefits” and setting forth retirement benefits and hospital, health, and disability insurance as the benefits to be provided to Sang; or provision twelve, which addressed additional benefits.
In the amended contract, provision two provided that in consideration for Sang’s agreeing to shorten the term of his employment he would receive $350,000; payment of hospital insurance premiums in the amount of $5,614.08; and the use of the automobile that the Board had leased for Sang’s use. Provision four of the amended contract provided, among other things, that the compensation set out in provision two fully settled and discharged all of the Board’s obligations to Sang under any employment contract between Sang and the Board “except the regular compensation and benefits which would be due Sang through August 31, 1991.”
In the January 6, 1993, order, the trial court determined that the phrase “regular compensation and benefits” in the amended contract was ambiguous. Specifically the trial court found:
“the phrase, ‘the regular compensation and benefits,’ is also ambiguous under the circumstances here involved. While sick leave and vacation days would be ordinarily considered a benefit, Sang was not due to be paid for any such days until the termination of his employment contract. While other amounts were specifically spelled out in the handwritten agreement and in the typewritten agreement providing for termination of Sang’s employment, no specific reference was made to the obligation of.the Board to pay Sang for unused sick leave and vacation days.”
After a careful review of the record evidence that was before the trial court, including the original employment contract and the amended contract, we, like the trial court, cannot conclude that only one reasonable meaning clearly emerges from the phrase “regular compensation and benefits.” Consequently, the trial court properly held that the phrase was ambiguous and subject to judicial interpretation.
Our supreme court has held that “[o]nce the court concludes the instrument is ambiguous or uncertain in any respect, determination of the true meaning of the contract is a question for the factfinder.” Martin, 608 So.2d at 401 (quoting Mass Appraisal Services, Inc. v. Carmichael, 404 So.2d 666, 673 (Ala.1981)). Furthermore, when evidence is presented ore tenus, the findings of fact by the trial court made after a determination that ambiguity existed as a matter of law, are presumed correct and will not be disturbed on appeal unless plainly and palpably wrong. Martin, supra.
After the trial court conducted an ore tenus proceeding, it found that under the *313 terms of the amended contract the Board was not obligated to pay Sang for accrued but unused sick leave or .vacation days. Specifically, the trial court found, inter alia:
“Some time during August, 1991, Sang began discussing concerns that related to his position as superintendent and his continued employment by the Board. Sang first met with Tim Hicks, the President of the Board, to express his concern. After his discussions with Hicks, Sang met with Tim Hicks and Kevin Walsh, both members of the Board, on August 19, 1991, to negotiate an agreement providing for the termination of Sang’s contract.
“Sang himself prepared a document setting out what he considered to be his compensation and fringe benefits arising out of his employment on an annual basis. Sang’s calculations indicated a total of fringe benefits and compensation in the amount of $151,322.93. He then divided by twelve to arrive at a monthly figure of $12,610.24, representing his monthly compensation and benefits. Calculating that his contract called for his continued employment from September 1, 1991, to June 30, 1994, a total of thirty-four months, Sang multiplied the figure of $12,610.24 by thirty-four to arrive at a total of compensation and fringe benefits over the thirty-four months of $428,748.16. This was the negotiating figure used by Sang. It was Sang’s position that the amount of $428,-748.16 was the amount which he would have received in benefits if he remained in his employment for the entire term of the employment contract. Sang did not include in his estimate the amount he was due to receive for accumulated and unused sick leave days and vacation days. At the rate of forty days per year, Sang would have been entitled to 113½ vacation and sick leave days over a period of thirty-four months. Calculated at the rate of $400.00 per day, Sang would have been entitled to an additional $45,332.00.
“While Sang could have needed some of the sick leave days in the event he became ill, the use of vacation days was entirely optional on his part. At the time of the contract discussions, almost two years after Sang’s employment, Sang had not used any of his sick leave days or vacation days.
“One explanation provided by Sang for omitting to include' an amount for sick leave and vacation days was that he had not yet earned them. However, Sang had not earned any of the items shown as compensation and benefits projected over thirty-four months in arriving at a total of $428,748.16. From his point of view, it would have made sense to have included an additional $45,332.00 representing the total sick leave and vacation days over the thirty-four months. Sang would then have been starting out with the negotiating figure of $474,000.00 instead of $428,000.00.
“During the trial, Sang was asked why he did not include sick leave and vacation days for the thirty-four months in calculating what he would have been entitled to receive over the remaining term of his contract. Sang testified as follows:
‘THE COURT: What I want you to explain to me, as I read in your original contract — under the original contract, the way you say it, you get twenty-five days paid vacation and you get fifteen days sick leave annually. Can you explain to me why you did not take the monthly amount of that and multiply it by thirty-four months and include it in this paper—
‘THE WITNESS (Sang): Yes, sir.
‘THE COURT: —So that, that would have increased the amount?
‘THE WITNESS: Yes, sir.
‘THE COURT: And it would have put them on notice that you were also figuring that as a benefit for which you were no longer — if it was important to you to get disability insurance and professional organization fees, why didn’t you include in this paper your retirement — I mean your sick leave and your vacation pay?
‘THE WITNESS: Judge, you’re a hundred percent right. If I thought that I wasn’t going to get it, I would, but it was already earned.
‘THE COURT: I’m not talking about what you earned, I’m talking about you expected — you were figuring the amount that you were losing by leaving early?
*314 ‘THE WITNESS: Yes.
‘THE COURT: Well, wouldn’t you be losing your vacation pay and retirement — I mean, your sick leave and vacation pay for thirty-four months?
* * * * * *
‘THE WITNESS: All I thought on vacation and sick leave is what I earned. You don’t have it until you earn it, so if you don’t work'—
‘THE COURT: Well, you didn’t have any of these others until you earned it, Mr. Sang.
‘THE WITNESS: Probably on second hindsight I probably should have put it down.
‘THE COURT: Well, I would have thought that if you would have put all these others like professional organization fees, health insurance, your automobile, matching funds, everything else, you would have put down vacation pay and figured out what the monthly amount is then multiplied it by thirty-four months and then also sick leave amounts and took that for thirty-four months and put that in there.
‘THE WITNESS: I should have done it probably.
‘MR. NORTH: Your Honor, our basic argument is that the only reason that they say they don’t owe him this is because it’s not a monthly thing.
‘THE COURT: Well, I’m just trying to understand if he left it out because he wanted to conceal it. I’m trying to understand why he didn’t put that in. He put everything else in over thirty-four months, and I’m trying to understand why he didn't put that one.
‘MR. NORTH: Because it is covered by paragraph nine of his contract.
‘THE COURT: No, it’s not. It’s not. Not in figuring the total amount.’
“Counsel for Sang argued that payment to Sang for sick leave and vacation days was contingent on his not having used those days during his employment. However, Sang in arriving at the total of $428,-748.16 for the thirty-four months included an amount of $200.00 each month for automobile maintenance. Under Sang’s employment contract, the amount to be paid for automobile maintenance was not a fixed amount of $200.00. The Board was required to pay all expenses for repairs and maintenance of the automobile leased by the Board and provided Sang. The $200.00 per month was obviously an estimate by Sang on a monthly basis of the cost of repairs and maintenance of the leased automobile.
“The contract sets out more definitely the number of sick leave and vacation days. Having in mind the exhaustive nature of the items included by Sang, his failure to include sick leave and vacation days was not inadvertent. Sang was not making any claim for unused sick leave and vacation days during the negotiations leading to the execution of the agreement involving the termination of Sang’s employment.
“In the agreement providing for the termination of Sang’s employment, it was agreed that the Board would pay Sang the sum of $350,000.00 in consideration of his agreement to shorten the term of his employment. The Board also agreed to pay Sang $5,614.08 in lieu of payments for hospital insurance and to permit the use by Sang of the leased automobile for a period not to exceed sixty days. Under paragraph four of the same agreement, the following was provided:
‘4. Sang shall and does hereby acknowledge and agree that the consideration described above shall operate to fully settle and discharge any and all of the Board’s obligations due him under any contract of employment between Sang and the Board, save and except the regular compensation and benefits which would be due Sang through August 31, 1991.... (Emphasis supplied)’
“The issue presented is whether the term, ‘regular compensation and benefits,’ includes the amount which would have been due Sang upon the termination of the contract thirty-four months later for unused sick leave and vacation pay.
“This [e]ourt considers the term ‘regular compensation benefits’ ambiguous. It *315 could mean only the amounts paid to Sang on a weekly or monthly basis rather than amounts due him at the expiration of the full term of his contract. It could mean that it was only contemplated that Sang would be paid his regular monthly wage through August 31, 1992. The term ‘benefits’ could also be construed to mean the specific benefits set out in Sang’s employment under the caption ‘Benefits,’ thereby excluding sick leave and vacation days. Under the evidence presented in this case, this [c]ourt concludes that the parties did not intend that unused sick leave and vacation days would be included in the amount due Sang on August 31, 1991.”
Based on our review of the record, we cannot hold that the trial court’s findings were plainly and palpably wrong; consequently, the judgment of the trial court is due to be affirmed.
AFFIRMED.
THIGPEN and YATES, JJ., concur.