**J.S. DeWEESE COMPANY, a Missouri Corporation, Plaintiff–Appellant,**

v.

**HUGHES–TREITLER MFG. CORP., a New York Corporation, Defendant–Respondent.**

No. 64425.

Missouri Court of Appeals, Eastern District, Division Three.

July 12, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 22, 1994.

Michael H. James, Doster, Robinson and James, Chesterfield, for plaintiff-appellant.

Erwin Oliver Switzer, Bryan Cave, St. Louis, for defendant-respondent.

SIMON, Presiding Judge.

Appellant, J.S. DeWeese Company, appeals the judgment of the Circuit Court of St. Louis County: (1) granting respondent's, Hughes–Treitler Manufacturing Corporation, motion to dismiss a claim for violation of § 407.913 R.S.Mo.1986 (all further references shall be to R.S.Mo.1986 unless otherwise noted); and (2) granting a motion for summary judgment for breach of contract and prima facie tort.

Appellant contends that the trial court erred in: (1) dismissing Count III of its original petition by holding that the remedy provided by § 407.913 is not available to a corporation; and (2) granting respondent's motion for summary judgment as to the breach of contract (Count I) and prima facie tort (Count II) claims because based upon the record, there were genuine issues of material fact and defendant was not entitled to judgment as a matter of law.

When reviewing a grant of a motion to dismiss a petition, all facts alleged in the petition are deemed true and the plaintiff is given the benefit of every reasonable intendment. *Magee v. Blue Ridge Professional Building Co.*, 821 S.W.2d 839, 842[2] (Mo. banc 1991). Further, when reviewing a grant of a motion for summary judgment, we view the facts in the light most favorable to the non-moving party. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376[1–3] (Mo. banc 1993).

Appellant and respondent entered into an agreement whereas appellant was appointed as the exclusive sales agent of respondent in Kansas, Missouri, Iowa, Indiana, and Illinois. Pursuant to the contract, appellant agreed to use its "best efforts" to promote the sale of respondent's products in the assigned areas. As compensation for its services as a sales

agent, appellant was to receive a certain commission based upon the net invoice value of all shipments of respondent's products to any area within appellant's territory. The commissions were to be paid on the fifteenth day of each month for all "shipments paid" during the preceding calendar month. The term of the agreement was for a period of one year, automatically renewed unless either party terminated the agreement. The contract provided for termination by either party, without cause, upon thirty days notice.

Appellant promoted the sale of respondent's products to an Indiana company, Allison Gas Turbines (Allison). During the term of the contract, Allison and respondent entered into a Preferred Supplier Agreement. This agreement did not include an agreement on price, nor did it obligate Allison to buy product from respondent.

Respondent attempted to terminate appellant from the Allison account. Appellant refused and stated its intention to collect commissions on the Allison account. Subsequently, the Manager of Marketing for respondent told appellant's president, J.S. DeWeese, that Mark Finkelstein, respondent's president, "got pissed" about appellant's position regarding the Allison commissions. Thereafter, respondent terminated the contract with appellant in accordance with the contract.

Appellant filed a three count petition against respondent seeking damages for breach of contract (Count I), prima facie tort (Count II), and violation of § 407.913 (Count III). Following the dismissal of Count III by the trial court for jurisdictional purposes, appellant filed a first amended petition on the other two Counts.

Respondent filed a motion for summary judgment as to both Counts of the first amended petition, which was granted by the trial court.

In its first point, appellant contends that the trial court erred in dismissing Count III by holding that the remedy provided by § 407.913 is not available to corporations, pursuant to § 407.911. Respondent contends that this court lacks jurisdiction over the appeal from the dismissal because the notice

of appeal did not refer to the order dismissing Count III. The notice refers only to the date of entry of the summary judgment on the "Date of Judgment" line. On the line labelled "Order of Judgment Appealed from," the appellant filled in "see attached," and only the Summary Judgment of July 22, 1993 referring to Counts I and II was attached.

Appellant argues that its failure to specify should not result in a dismissal because the respondent has not been prejudiced and was aware that appellant intended to appeal from the directed verdict because the issues were discernable from the briefs and the record.

A proper notice of appeal is a jurisdictional prerequisite and "shall specify ... the judgment or order appealed from." Rule 81.08(a). It is well settled that the formal averments contained in a notice of appeal are to be liberally construed in order to permit appellate review so long as the opposing party has not been misled to his irreparable harm. *Allison v. Sverdrup and Parcel and Assoc.*, 738 S.W.2d 440, 443[1] (Mo.App.1987). Rules should be liberally construed in favor of allowing appeals to proceed. *Williams v. MFA Mutual Insurance Co.*, 660 S.W.2d 437, 439 (Mo.App.1983).

We discern no evidence that respondent has been prejudiced by appellant's failure to specify on the notice of appeal the order dismissing Count III. Appellant's brief and the record on appeal clearly indicate that the order dismissing Count III is being appealed.

Turning to appellant's first point, we note that where a petition is attacked by a motion to dismiss for failure to state a claim, the facts alleged are taken to be true and the pleader is entitled to all favorable inferences fairly deducible therefrom; if the facts pleaded and reasonable inferences to be drawn therefrom, looked at most favorably from the plaintiff's viewpoint, show any ground for relief, then the petition should not be dismissed. *Johnson v. Great Heritage Life Insurance Co.*, 490 S.W.2d 686, 690[9] (Mo.App. 1973).

Appellant alleged in Count III of its original petition that it was entitled to commissions from respondent pursuant to §§ 407.-911 and 407.913 of the sales commission stat-

utes. Section 407.913 provides in pertinent part:

Any principal who fails to timely pay the sales representative commissions earned by such sales representative shall be liable to the sales representative in a civil action . . .

The definitional section, § 407.911.1 provides in pertinent part:

(2) 'Principal', a person, firm, corporation, partnership or other business entity, whether or not it has a permanent or fixed place of business in this state . . .

(3) 'Sales Representative', a person who contracts with a principal to solicit wholesale orders and who is compensated, in whole or in part, by commission . . .

The text of the sales commission statutes do not specifically provide for the definition of "person." Therefore, appellant contends, relying on § 1.020(11), a general definition statute, that the word "person" may extend to a corporation unless "plainly repugnant to the intent of the legislature or the context thereof". The use is permissive and not mandatory. *Mark Twain Cape Girardeau Bank v. State Banking Board,* 528 S.W.2d 443, 446[3] (Mo.App.1975). The definitions provided in § 407.911 make it obvious that the sales commission sections are available only to sales representatives who are natural persons. Section 407.911 defines a "principal" as a "person, firm, corporation, partnership, or other business entity . . . which contracts with a sales representative paid in whole, or in part, by commission." § 407.911.1(2). It next defines a "sales representative" as a "person". § 407.911.1(3).

■■■ As respondent suggests, the "stark" contrast in the consecutive subsections of the statute reflect a clear legislative intent that the statute is available only to sales representatives who are natural persons and not corporations. Further, when determining meaning of words intended by the legislature, "the general rules of statutory construction require that meaning be given to each word used in the legislative enactment, insofar as possible and one word of the statute should not be considered a needless repetition of another." *Lora v. Director of Revenue,* 618 S.W.2d 630, 633[1] (Mo.1981);

quoting *State ex rel. Thompson-Stearns-Roger v. Schaffner,* 489 S.W.2d 207, 215[5] (Mo.1973). The legislature is presumed not to enact meaningless provisions. *Wollard v. City of Kansas,* 831 S.W.2d 200, 203[2-5]. If it is as appellant argues, that "person" as used in the definition of "sales representative", includes "firms, corporations, partnerships, or other business entities," then the inclusion of "firms, corporations, partnerships, or other business entities" in addition to "person", within the definition of "principal" would be repetitious and of no significance.

Additionally, wording in other parts of the sales commission sections tend to show that the legislature was concerned with natural persons who were employees or the functional equivalent. In § 407.912, the title refers to termination of *employment,* a word generally applicable to natural persons, not corporations. This further evidences the legislative intent to include only natural persons in the sales representative definition.

Thus "person" under the "sales representative" definition of § 407.911.1(3), applies only to natural persons. Appellant's first point is without merit.

In its second point on appeal, appellant contends that the trial court erred in granting summary judgment in favor of the respondent as to the breach of contract and prima facie tort claims because there were genuine issues of material fact and respondent was not entitled to judgment as a matter of law.

■■■ Under Rule 74.04(c), the trial court shall enter summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *ITT Commercial Finance v. Mid-Am Marine,* 854 S.W.2d 371, 381[16, 17] (Mo. banc 1993). We review the record in the light most favorable to the non-movant. *Id.* at 382[18-21]. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-movant's response to the summary judgment motion. *Id.* at 376[1-3]. We ac-

cord the non-movant the benefit of all reasonable inferences from the record. *Id.* Our review is essentially de novo. *Id.* at 376[4–6]. The propriety of summary judgment is purely an issue at law, and therefore we need not defer to the trial court's order granting summary judgment. *Id.*

Where the movant is a defending party not bearing the burden of persuasion at trial, it may establish a right to judgment by showing: (1) facts that negate any one of the claimant's elements facts; (2) that the non-movant, after a period of discovery, has not been able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the moving party's properly pleaded affirmative defense. *Id.* at 381[16].

Appellant first contends that the affidavit offered by it in opposition to respondent's motion for summary judgment established that genuine issues of material fact existed concerning the right of appellant to compensation under the contract including: (1) whether under the terms of the agreement, the Preferred Supplier Agreement entitles appellant to commissions; (2) whether appellant was obligated to service customers after a sale as a condition precedent to receiving compensation; and (3) whether the custom and practice in the industry with respect to compensation after termination requires payment of the commission.

Respondent contends that summary judgment was proper because: (1) Missouri case law specifically holds that sales representatives, like appellant, are not entitled to commissions on post-termination sales; (2) the plain language of the agreement does not dictate payment of commissions on post-termination sales; and (3) the assertions in appellant's brief are not only unsupported by the record, they are contradicted by appellant's own testimony, are vague and conclusory, and are legally irrelevant.

In its brief, appellant argues that "the contract did *not* contain a provision limiting or restricting the right of [appellant] to be paid compensation for services performed prior to termination," and therefore there is a duty to pay appellant commissions for services performed prior to termination.

The pertinent provisions of the agreement provide:

2. [Respondent] shall pay to [appellant] as its entire compensation for its services as such sales agent commissions set forth below of the net invoice value of all shipments of its products to any part of the territory ... The commissions are to be paid on the 15th day of each month for all shipments paid during the preceding calendar month.

7. The term of this Agreement shall commence from the date hereof and remain in effect for 12 months, provided, however, either party may terminate this Agreement by giving thirty (30) days written notice to the other party.

Attendant extrinsic facts may be used to aid in the interpretation of an unambiguous contract, but these facts may not be used to change the obligations defined in a contract. *Jake C. Byers v. J.B.C. Investments*, 834 S.W.2d 806, 814[8] (Mo.App.1992). Extrinsic evidence cannot be used to create an ambiguity. *Id.* at 816[10]. It is only where the contract is ambiguous and not clear that resort to extrinsic evidence is proper to resolve the ambiguity. *Peterson v. Continental Boiler Works, Inc.*, 783 S.W.2d 896, 901[2] (Mo. banc 1990). Mere disagreement by the parties over the meaning of the contract will not constitute an ambiguity; a contract is ambiguous only if its terms are susceptible of more than one meaning so that reasonable persons may fairly and honestly differ in their construction of the terms. *Id.*

The payment and termination provisions are explicit: the agreement states that commissions are to be based upon "shipments paid" during the preceding month, and that "either party may terminate this agreement by giving (30) days notice to the other party." The agreement is clear and unambiguous as to when the duty arises to pay commissions to appellant: only upon "shipments paid" during the preceding month.

Appellant further contends that there is a duty to pay commissions on post-

termination sales. A manufacturer's representative with servicing responsibilities loses his right to collect commissions on pre-termination business upon termination. *Hogan v. NEC Insurance, Inc.*, 848 S.W.2d 48, 50[1, 2] (Mo.App.1993). A finder has a continuing right to the commissions on business even after termination. *Id.* The rationale behind this distinction is that a finder has completed all of the work that needs to be completed and the right to payment vests upon the finding of business, while a manufacturer's representative has continuing duties to service an account. *Id.* This distinction can be modified by contract. *Id.*

In its memorandum in support of its motion for summary judgment, respondent offers DeWeese's own testimony in deposition which clearly places his duties as a sales manufacturer's representative within the realm of "servicing" customers. When asked to describe his duties as a manufacturer's representative, he replied: "We support their existing customers and existing applications." DeWeese further admitted that his duty to use "best efforts", as described in the employment contract, continued after a commission was earned.

In opposition to respondent's motion for summary judgment, appellant only offers the conclusory statement in his post-deposition affidavit that he was not obligated to provide post-sale service "such as scheduling, qualification testing, engineering, delivery of product or transmittal of documents". This affidavit does not deny the existence of *all* post-sale "servicing". Respondent correctly points out in its memorandum in support of its motion for summary judgment that in deposition, DeWeese admitted to performing *some* post-sale "servicing". Further, respondent correctly asserts that in DeWeese's affidavit offered *in opposition to summary judgment*, DeWeese admitted that appellant did not find Allison, but rather respondent told appellant to contact Allison.

 A party may not avoid summary judgment by giving inconsistent testimony and then offering the inconsistencies into the record in order to demonstrate a genuine issue of material fact. *ITT*, 854 S.W.2d at 388[39]. The record does not support the contention that appellant was a "finder" and therefore entitled to post-termination commissions. *See E.F. Higgins, Inc. v. Kuhlman Die Casting Co.*, 663 S.W.2d 318, 320[1] (Mo.App.1983).

 Appellant further contends that the custom and practice in the industry, with respect to compensation after termination, requires payment of the commission. Respondent contends that: (1) custom is inadmissible in this case because it would contradict the plain meaning of the contract; and (2) the custom proposed by appellant is insufficient because it lacks foundation.

 Custom and usage may be used to supply an omitted term from a contract, or to remove an ambiguity, however, the rule is not applicable if the contract is complete. *Byers*, 834 S.W.2d at 817[12]. Further, custom and usage may be used only to remove ambiguities, not to contradict the plain meaning of a written contract. *Harris v. Union Electric Co.*, 622 S.W.2d 239, 250[13, 14] (Mo. App.1981).

In *Byers*, "usage" was disallowed because it would have changed the unambiguous terms of an escrow agreement. *Byers*, 834 S.W.2d at 817[12]. If custom as to post-termination commissions was admissible in the instant action, it would contradict the plain meaning of the contract.

Further, the evidence proposed by the appellant as to custom or industry practice was insufficient because there was no foundation for appellant's statement that the custom existed. In support of its motion, respondent correctly points out that DeWeese admitted in his deposition that he knew of no situations: (1) like the one involved in this case where post-termination commissions were paid; (2) where commissions were paid where the contract did not provide for commissions after termination; and (3) where commissions were paid after termination when there was no more than an agreement to negotiate with no commitment to purchase prior to termination.

 The only evidence offered by appellant was a statement made by DeWeese in affidavit, that there was a standard practice

in the industry to pay post-termination commissions. As stated previously, a party may not avoid summary judgment by giving inconsistent testimony and then offering the inconsistency into the record in order to demonstrate a genuine issue of material fact. *ITT*, 854 S.W.2d at 388[39]. Further, affidavits must be made on personal knowledge, shall set forth facts as would be admissible into evidence, shall show affirmatively that the affiant is competent to testify on the matters therein, and an affidavit which fails to aver specific facts and relies only upon mere doubt and speculation fails to raise any issue of material fact. *St. Charles v. Dardenne Realty Co.*, 771 S.W.2d 828, 830–831[4–6] (Mo. banc 1989). The statement by appellant failed to aver specific facts so as to create a genuine issue as to a material fact. *See ITT*, 854 S.W.2d at 382[17].

The appellant further contends that the trial court erred in granting respondent's motion for summary judgment in regards to its prima facie tort claim. This claim alleges that the termination of the employment contract by respondent amounted to a prima facie tort.

To maintain a claim of relief for a prima facie tort, the following elements must be satisfied: (1) an intentional lawful act by the defendant; (2) an intent to cause injury to the plaintiff; (3) injury to the plaintiff; and (4) an absence of any justification or insufficient justification for the defendant's act. *Porter v. Crawford and Co.*, 611 S.W.2d 265, 268[1, 2] (Mo.App.1980).

As to the second element, the prima facie tort doctrine requires an actual intent to injure the plaintiff. *Lundberg v. Prudential Insurance Co. of America*, 661 S.W.2d 667, 670[3, 4] (Mo.App.1983). Spite or ill-will is necessary to satisfy the requisite intent. *Dowd v. General Motors Acceptance Corp.*, 685 S.W.2d 868, 875[5] (Mo.App.1984). The burden to submit evidence to prove intent to injure is a heavy one. *Lundberg*, 661 S.W.2d at 670[3, 4].

In support of its motion, respondent offered the deposition of DeWeese in which he expressly denied that any animosity existed between the parties:

> Q: Did you ever have a feeling of personal animosity between you and Mr. Finkelstein, or between you and Mr. Cunningham?
>
> A: No.
>
> Q: Either Way?
>
> A: No.

This statement by DeWeese is consistent with respondent's affidavit that the termination of the contract was not based upon an intention to harm appellant, upon malice, nor upon ill-will.

In its memorandum in opposition to the motion for summary judgment, appellant incorrectly argues that a previous communication between one of respondent's representatives and appellant amounts to the requisite intent. In affidavit, DeWeese stated that in a conversation with Gene Cunningham, the Manager of Marketing for respondent, Cunningham stated that Mark Finkelstein, respondent's president, "got pissed" because appellant expected compensation for the Allison account. However, when DeWeese asked for a qualification of this statement, Cunningham immediately replied that "pissed" was not the proper word, and rather Finkelstein simply "disagreed with DeWeese's position".

In a similar employment contract case, we held that evidence of a "heated argument", which amounted to a threat, and subsequent termination between a principal and his agent, did not rise to the requisite level of "ill-will" for actual intent to injure. *Costello v. Shelter Mut. Ins. Co.*, 697 S.W.2d 236, 239[2] (Mo.App.1985). Further, in *Costello*, the employment contract allowed termination only for good cause. *Id.* Here, the communication was a mere statement that Finkelstein "got pissed", which was subsequently retracted. Appellant was lawfully terminated under an employment contract which was terminable at the will of both parties upon thirty days notice. Appellant's evidence is weaker than the insufficient evidence of *Costello*, and therefore insufficient to sustain the "intent to injure" element.

Appellant has not submitted evidence that shows two plausible, but contradictory, accounts of the essential facts. See *ITT*, 854

S.W.2d at 382[17]. Respondent established that the intent element was not satisfied and appellant did not create any genuine dispute as to a material fact.

Judgment affirmed.

PUDLOWSKI and KAROHL, JJ., concur.