Richard W. **HOFFMAN**,
Plaintiff/Appellant,

v.

**VAN PAK CORPORATION**,
Defendant/Respondent.

No. **ED 75976**.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 7, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 11, 2000.

Application for Transfer Denied
May 30, 2000.

Stephen G. Bell, Ronald J. Wuebbeling, St. Louis, for appellant.

Robert J. Tomaso, D. Shane Jones, Blackwell Sanders Peper Martin LLP, St. Louis, for respondent.

KATHIANNE KNAUP CRANE, Presiding Judge.

Plaintiff, who formerly had been employed by defendant as a salesman, appeals from that part of the trial court's judgment denying relief under Sections 407.911–.915 RSMo (1994), which provides for damages, in addition to actual damages, to certain "sales representatives" who were not timely paid "commissions" pursuant to a contract with a "principal" to solicit "wholesale" orders. We affirm on the grounds that sufficient evidence supported the trial court's finding that defendant was not a "principal" as defined in the statute.

## FACTUAL BACKGROUND

We view the facts in the light most favorable to the judgment. Defendant, Van Pak Corporation, was a manufacturer of conveyors, palletizers, and electrical control systems and a distributor of cylinder products. These were custom products or systems which defendant produced in response to individual customer orders. In negotiating the sale, defendant sometimes recommended a system for the customer. In other cases, the customer engineered a proposed system and sent it to defendant for a bid. When the order and deposit were received, defendant produced the system as ordered. Payment was not due until delivery or until the product was successfully started up. After the product was made, defendant also provided installation services and installed "a good percentage" of what it sold. Defendant sold its products primarily to end users. Defendant sometimes custom-manufactured systems and equipment for a company which would provide defendant's product, either alone or as part of a larger system, to one of its own customers. Defendant also sold parts or bearings to the aftermarket, which, its officers testified, were wholesale sales that constituted less than one percent of its business.

Plaintiff, Richard W. Hoffman, began his employment with defendant on April 1, 1996 and spent six months training for a sales position. After completing the training, plaintiff was given a sales territory with an existing customer base and entered into defendant's Incentive Compensation Agreement for Qualified Salesman for F1997 (compensation agreement) dated October 1, 1996 and effective until September 30, 1997. The compensation agreement provided plaintiff with an annual draw of $48,000 paid monthly against commissions, incentive compensation paid monthly after accruing credit for the annual draw, and reimbursement for authorized business expenses, including travel, meals, and customer entertainment. The formula for compensation was set out in the incentive plan:

> Commissions earned will be calculated as a percentage of accumulated gross margins on each sale. * * * The percentage of margin used to offset the gross margin quota will be 35% of the cumulative margin until the salesman exceeds his gross margin quota. Commission earned after satisfying the gross margin quota will be at a rate of 40%.

The compensation agreement provided that the incentive compensation would be credited at the time of booking and paid in the month after the booking was paid. It further provided: "A Salesman must be working for Van Pak Corporation during the month the applicable portion of the incentive compensation is earned to be eligible for the payment."

Pursuant to the compensation agreement, plaintiff was responsible for sales of four types of accounts: end user, aftermarket, resale, and OEM accounts. The compensation agreement described these accounts in the following manner:

a. End user—the typical product or service user.

b. Aftermarket—parts business.

c. Resale—another company similar to Van Pak Corporation buying a product or service to resell on its own or as part of a system.

d. OEM—An Original Equipment Manufacturer for whom we supply a product that they resell or incorporate into their product or product line.

Plaintiff's sales territory consisted of part of St. Louis County, southeast Missouri and the state of Arkansas. In addition, the compensation plan provided that plaintiff was to work in the office when not making sales calls and could take vacation as set out in the company manual. According to the employee handbook, either the employee or the company could termi-

nate employment at any time for any or no reason.

Plaintiff worked for defendant during the 1997 fiscal year. On October 1, 1997, defendant introduced a new incentive compensation plan for fiscal year 1998. Under this plan plaintiff became a Regional Sales Manager, was assigned a nine-state territory plus part of Missouri, would earn commissions of 2% of all sales, and would be reimbursed for expenses on a different basis. Plaintiff raised his concern that he would receive substantially less compensation under the new plan. Plaintiff informed defendant's president that, because of the changes in the new compensation plan, he intended to submit a proposal for resignation. On October 20, 1997 defendant terminated plaintiff. Plaintiff asserted that he was owed additional commissions for the period of October 1, 1996 through September 30, 1997.

On April 17, 1998, plaintiff filed a petition in the Circuit Court of St. Louis County to recover commissions in the amount of $99,307.85 and for other relief. At trial plaintiff submitted the case on breach of contract. The issue for the jury was whether plaintiff was working for defendant during the month the claimed commissions were "earned" under the terms of the compensation agreement. The parties disputed whether orders which had been made while plaintiff was employed, but not billed and closed while he was employed were "earned" while he was employed. The jury returned a verdict in plaintiff's favor for $99,200.21.

By stipulation, the motion for pre-judgment interest, attorney's fees, and damages under Section 407.913 was submitted to the court. In its judgment the court awarded plaintiff damages in accord with the jury's verdict and assessed pre-judgment interest in the amount of $7,631.62, from April 20, 1998, the date on which the parties stipulated that all orders solicited by plaintiff were fully billed and closed. The court denied plaintiff's claim for statutory damages on the grounds that:

1) the Defendant is not engaged in the business of manufacturing, producing, importing, or distributing a product for wholesale; 2) the Incentive Compensation Agreement entered into by Plaintiff and Defendant does not provide for payment of a commission based upon a percentage of the dollar amount of orders or sales; 3) the agreement between the parties does not provide that plaintiff was to solicit wholesale orders.

Plaintiff appeals from that part of the judgment denying additional statutory damages.

## DISCUSSION

For his sole point on appeal plaintiff contends that the trial court erred in denying his claim for additional damages under Sections 407.911–.915 because he presented uncontroverted facts at trial which established his right to recover damages under that statute.

We must affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.1976). We accept the evidence and all favorable inferences in the light most favorable to the prevailing party. *Mullenix–St. Charles Properties, L.P. v. City of St. Charles*, 983 S.W.2d 550, 555 (Mo.App.1998). We defer to the trial court's factual findings because of its superior position to assess credibility. *Id.*

In addition to the damages he recovered for breach of contract, plaintiff sought to recover additional damages under Section 407.913 RSMo which provides:

Any principal who fails to timely pay the sales representative commissions earned by such sales representative shall be liable to the sales representative .... an additional amount as if the sales representative were still earning commissions calculated on an annualized pro rata ba-

sis from the date of termination to the date of payment. In addition the court may award reasonable attorney's fees and costs to the prevailing party.

For this statute to apply to the parties of this case, plaintiff had to show that defendant was a "principal," that plaintiff was a "sales representative," and that plaintiff was compensated by "commission" as those terms are defined in Section 407.911:

> 407.911. **Definitions** — As used in sections 407.911 to 407.915, the following terms mean:
>
> (1) **"Commission"**, compensation accruing to a sales representative for payment by a principal, the rate of which is expressed as a percentage of the dollar amount of orders or sales, or as a specified amount per order or per sale;
>
> (2) **"Principal"**, a person, firm, corporation, partnership or other business entity, whether or not it has a permanent or fixed place of business in this state, and who:
>
> a) Manufactures, produces, imports, or distributes a product for wholesale;
>
> b) Contracts with a sales representative to solicit orders for the product; and
>
> c) Compensates the sales representative, in whole or in part, by commission;
>
> (3) **"Sales representative"**, a person who contracts with a principal to solicit wholesale orders and who is compensated, in whole or in part, by commission, but shall not include one who places orders or purchases for his own account for resale.

Plaintiff contends that defendant was a "principal" under the statute. The first criterion for a principal is that it manufacture, produce, import or distribute a product "for wholesale." "Wholesale" is not defined by the statute.

In determining legislative intent, we must give an undefined word used in a statute its plain and ordinary meaning. *State v. Burnau*, 642 S.W.2d 621, 623 (Mo. 1982). Under traditional rules of construction, the word's dictionary definition supplies its plain and ordinary meaning. *Spradlin v. City of Fulton*, 982 S.W.2d 255, 262 (Mo. banc 1998) (Blacks Law Dictionary); *Asbury v. Lombardi*, 846 S.W.2d 196, 201 (Mo. banc 1993) (Webster's Third International Dictionary). Further, we presume that the legislature acted with knowledge of any prior judicial construction of the term. *Citizens Elec. Corp. v. Director of Dept. of Revenue*, 766 S.W.2d 450, 452 (Mo. banc 1989); *State v. Stout*, 958 S.W.2d 32, 34 (Mo.App.1997).

At the time this statute was enacted, Missouri case law had established the plain and ordinary meaning of "retail" and "wholesale." When not defined in the statute in which those words were used: "Retail means 'a sale in small quantity or direct to the consumer, as distinguished from the word wholesale meaning a sale in large quantity to one who intends to resell.'" *Burnau*, 642 S.W.2d at 623 (quoting *Fountain v. St. Joseph Water Co.*, 352 Mo. 817, 180 S.W.2d 28, 31 (1944)). The court added: "A wholesaler is one who 'never sells to the ultimate consumer.'" *Id.* (quoting *Fischbach Brewing Co. v. City of St. Louis*, 231 Mo.App. 793, 95 S.W.2d 335, 340 (1936)). Webster's Third International Dictionary (1986), in use in 1989, defined the noun "wholesale" as "the sale of goods or commodities in quantity usu. for resale (as by a retail merchant)." It defines the adjective "wholesale" as "of, relating to, or engaged in the sale of goods or commodities in quantity for resale." Blacks Law Dictionary, in use in 1989, defined "wholesale" as "selling to retailers

or jobbers rather than to consumers...a sale in large quantity to one who intends to resell." BLACK's LAW DICTIONARY 1432 (5 th ed.).

These dictionary definitions of "wholesale" have been adopted in construing the New Jersey Sales Representatives' Rights Act, N.J.S.A. 2A:61A–1 et seq., which also defines "principal" as one who "manufactures, produces, imports or distributes a product for wholesale." *American Delta Technologies, Inc. v. RK Electronic Information Concepts*, 276 N.J.Super. 283, 647 A.2d 1344, 1346–47 (App.Div.1994).

Plaintiff's reliance on broader definitions of "wholesale" found in *Roland Electrical Co. v. Walling*, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383 (1946) and *Holtz v. Plastore*, 760 F.Supp. 698 (N.D.Ill.1991) is misplaced. In *Roland Electric* the question before the Court was whether the exemption from the Fair Labor Standards Act for employees engaged in retail or service establishments applied to employees of a firm which engaged in manufacturing and supplying electrical equipment and services in interstate commerce to commercial and industrial users. The Court analyzed the word "retail" by contrasting it with "wholesale." Its conclusion, that the firm in question was not a retail or service establishment under the Fair Labor Standards Act, cannot be taken out of that context and fairly be applied to the Missouri statute at issue here. We also find unpersuasive the fact that, in denying a motion to dismiss, the Illinois federal district court in *Holtz* adopted the *Roland Electric* definitions in determining the meaning of "wholesale" under the Illinois Sales Representative Act. ILL.REV.STAT. Ch. 48, para. 2251 (1985), *amended by* 820 ILCS 120/1 (1993).

■ There was sufficient evidence to support the trial court's finding that defendant did not manufacture, produce, import, or distribute a product for wholesale. Plaintiff adduced no evidence of sales made of a product in large quantities to one who intends to resell. Rather, the evidence was that defendant primarily custom-manufactured each product after it was ordered according to that customer's specifications. The sales were primarily to end users. The fact that two customers were companies in the same industry which ordered a system or custom equipment to resell to its own customer or to incorporate into a product that they made did not convert these sales into wholesale sales. There was no evidence that such orders for a custom product involved the sale of a large quantity of items to the customer for resale.

■ Plaintiff last argues that there is no good reason for restricting the application of the statute based on "semantics" and that, as a commissioned salesman, the statute should apply to him. Section 407.913 provides for additional monetary damages, in addition to actual damages, for the untimely payment of commissions. Statutes imposing penalties must be strictly construed. *Masterson v. Roosevelt Bank*, 919 S.W.2d 9, 11 (Mo.App.1996). The statute uses the word "wholesale" in defining both "principal" and "sales representative." We presume that the legislature did not insert idle verbiage or superfluous language in the statute. *Hyde Park Housing Partnership v. Director of Revenue*, 850 S.W.2d 82, 84 (Mo. banc 1993). Each word, clause, sentence, and section of a statute should be given meaning. *Hadlock v. Director of Revenue*, 860 S.W.2d 335, 337 (Mo. banc 1993); *J.S. DeWeese Co. v. Hughes–Treitler Mfg. Corp.*, 881 S.W.2d 638, 643 (Mo.App.1994).

These rules of construction have been applied to hold that "sales representatives" under this statute are limited to natural persons. *Id.* Further, other jurisdictions using these rules, have held that "product," as used in similar statutes, refers only to tangible, manufactured goods and does not include services. *American Delta Technologies, Inc.*, 647 A.2d at 1347; *English Co. v. Northwest Envirocon. Inc.*, 278 Ill.App.3d 406, 215 Ill.Dec. 437, 663 N.E.2d 448, 454 (1996).

■ It is clear that in its use of the word "wholesale" the legislature intended

to address a problem in the wholesale distribution system and wholesale markets and did not intend to create additional remedies for all salespersons who are paid by commission. Whether such a remedy should be extended to all commissioned salespeople is a question for the legislature, not for the courts.

Because defendant was not a "principal" as defined by Section 407.911.1(2)(a) of statute the trial court did not err in denying damages under Section 407.913 RSMo.[1]

The judgment of the trial court is affirmed.

ROBERT G. DOWD, Jr., J. and SHERRI B. SULLIVAN, J., concur.

---

1. Because this case is resolved by the issue of whether defendant manufactured, etc. a product for "wholesale," we do not address whether the transaction or the parties fell within or without any other provision of Sections 407.911–.915.