RMC Associates, Inc., appeals from a judgment awarding Gary Beasley treble damages, attorney's fees, and costs, pursuant to § 8-24-3, Ala. Code 1975, as a consequence *Page 880 
of RMC's failure to pay Beasley a sales representative's commission upon the termination of his employment.
Section 8-24-3 is the penalty provision of an act dealing with "Sales Representative's Commission Contracts," §8-24-1 et seq., Ala. Code 1975 ("the Act").
 "The [Act] requires that commissions `due at the time of termination' be paid within 30 days, but it also requires that commissions yet to accrue be paid within 30 days of the date on which they become due. Clearly, the [Act] contemplates that a sales representative is to be paid commissions that accrue on accounts that, because of his or her efforts on behalf of the principal, continue to provide business to the principal following termination of the representative."
(Emphasis omitted.) Lindy Mfg. Co. v. Twentieth CenturyMarketing, Inc., 706 So.2d 1169, 1174 (Ala. 1997). The Act provides that, if a principal fails to pay a sales representative's commission when it is due, the principal "is liable to the sales representative in a civil action for three times the damages sustained by the sales representative plus reasonable attorney's fees and court costs." § 8-24-3.
RMC is an industrial distributor of pipeline products such as valves, expansion joints, and coatings. RMC's customers are chemical plants, power plants, and paper mills in a three-state region. Most of RMC's customers are end users of the products they buy from RMC, although a few — perhaps one percent, according to RMC president Phillip Randall Copeland — buy for resale to other customers.
Beasley worked as a salesman for RMC from January 28, 2000, to September 2, 2003, and he was paid a salary plus commissions. On August 15, 2003, Beasley sold valves to RMC's customer, Stone Container Company, a paper mill in Panama City, Florida. It is undisputed that Stone Container purchased the valves in order to install them in its mill, not to resell them. After Beasley resigned his employment on September 2, 2003, RMC refused to pay him a commission for the sale of the valves to Stone Container.
Section 8-24-1, Ala. Code 1975, is the definitional section of the Act. It provides:
 "As used in this chapter, the following terms shall have the following meanings, respectively, unless the context clearly indicates otherwise:
 "(1) Commission. Compensation accruing to a sales representative for payment by a principal, the rate of which is expressed as a percentage of the dollar amount of certain orders or sales.
 "(2) Principal. Any person who does all of the following:
 "a. Engages in the business of manufacturing, producing, importing, or distributing a product or products for sale to customers who purchase the product or products for resale.
 "b. Utilizes sales representatives to solicit orders for the product or products.
 "c. Compensates the sales representatives, in whole or in part, by commission.
 "(3) Sales Representative. Any person who engages in the business of soliciting, on behalf of a principal, orders for the purchase at wholesale of the product or products of the principal, but does not include a person who places orders or purchases for his or her own account for resale, or a person engaged in home solicitation sales.
 "(4) Termination. The end of services performed by the sales representative for the principal, whether by discharge, resignation, or expiration of a contract." *Page 881 
On appeal, RMC does not contest the fact that it owed Beasley a commission on the sale of the valves to Stone Container. RMC contests only its liability for treble damages, attorney's fees, and costs under the Act. RMC contends that the statutory penalties provided for in the Act do not apply to Beasley's commission on the sale to Stone Container because that particular transaction did not involve the sale of a product for resale but, instead, involved the sale of a product to an end user.
Beasley's claim was tried to a jury. At the close of Beasley's evidence and then at the close of all the evidence, RMC moved for a judgment as a matter of law ("JML"), arguing that the Act applied, as a matter of law, only to wholesale transactions, and citing decisions construing Missouri, New Jersey, and South Carolina Sales Representative's Commission Acts. See Hoffman v. Van Pak Corp., 16 S.W.3d 684
(Mo.Ct.App. 2000); American Delta Techs. Inc. v. RK Elec.Infor. Concepts, 276 N.J.Super. 283, 647 A.2d 1344 (1994); and Lee v. Thermal Eng'g Corp., 352 S.C. 81,572 S.E.2d 298 (2002). See also Zauderer Assocs., Inc. v. C J Indus., Inc., 378 F.Supp.2d 682
(D.S.C.2005) (applying South Carolina law).
Beasley argued at trial and now maintains on appeal that the Act does not require that the sale at issue be a wholesale transaction or that the principal be engagedexclusively in selling at wholesale. He contends that the Act requires only that the principal be "engaged [to some extent] in the business of" offering products for resale and that the sales representative be "engaged [to some extent] in the business of" soliciting orders for purchase of the principal's products at wholesale. Beasley maintains that, because the evidence established that a portion of RMC's business (albeit a very small portion, only one percent) was composed of wholesale transactions, the Act applies. Beasley argues that because the parties were engaged in the business of wholesale sales, the particulars of any specific sales transaction — whether to an end user or to a buyer for resale to another buyer — were immaterial. In essence, Beasley maintains that the applicability of the Act turns upon the parties' status as "principal" and "sales representative" as those terms are defined in § 8-24-1, irrespective of the nature of the specific transaction, whereas RMC maintains that the nature of the transaction at issue is controlling in determining whether the parties fit within the definitions of "principal" and "sales representative." Without deciding whether the parties' "status" or the nature of the "transaction" at issue was determinative in deciding the applicability of the Act, the trial court concluded that whether RMC was a "principal" and whether Beasley was a "sales representative" within the meaning of the Act were questions of fact to be resolved by the jury.
 "This Court reviews a denial of a motion for a JML by the same standard the trial court used in initially denying the motion. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala. 1997). Furthermore, we must determine `whether the party who bears the burden of proof had produced substantial evidence creating a factual dispute requiring resolution by the jury.' Bell v. T.R. Miller Mill Co., Inc., 768 So.2d 953, 956 (Ala. 2000), citing Carter v. Henderson, 598 So.2d 1350 (Ala. 1992). We view the evidence in a light most favorable to the nonmoving party and entertain any reasonable inferences the jury may have been able to draw. Bell, 768 So.2d at 956. Notwithstanding, we accord the trial court's ruling on a question of law no presumption of correctness. Id." *Page 882 
LaFarge Bldg. Materials, Inc. v. Stribling,880 So.2d 415, 418-19 (Ala. 2003).
Alabama is one of 33 states that have enacted laws to protect commissions earned by sales representatives. See
Randall J. Gillary Kevin P. Albus, Michigan's SalesRepresentative Act Revisited — Again — Or, Does"Intentionally" Mean "In Bad Faith", 2001 Mich. St. — Det. Coll. of Law L.Rev. 965, 976 n. 57 (Fall 2001). "[T]he statutes enacted in most of these states are essentially modified versions of the model act," id. at 976-77, which was drafted by counsel for the Bureau ofWholesale Sales Representatives, id. at 975 n. 52.
Alabama's version of the model act defines a "principal" as one who:
 "a. Engages in the business of manufacturing, producing, importing, or distributing a product or products for sale to customers who purchase the product or products for resale.
 "b. Utilizes sales representatives to solicit orders for the product or products.
 "c. Compensates the sales representatives, in whole or in part, by commission."
§ 8-24-1(2) (emphasis added). Section 8-24-1(3) defines a "sales representative" as a person who
 "engages in the business of soliciting, on behalf of a principal, orders for the purchase at wholesale of the product or products of the principal, but does not include a person who places orders or purchases for his or her own account for resale, or a person engaged in home solicitation sales."
(Emphasis added.)
RMC cites decisions from New Jersey and South Carolina construing the versions of the model act in effect in those jurisdictions. We have determined that the New Jersey and South Carolina decisions are of little or no help in resolving the "status" versus "transaction" question presented by the Alabama Act because the New Jersey and South Carolina statutes specifically exclude from the definition of "sales representative" one who "sells or takes orders for the sale of products to the ultimate consumer." See N.J. Stat. Ann. § 2A:61A-1c. (quoted in American Delta,276 N.J.Super. at 287, 647 A.2d at 1347); S.C. Code Ann. §39-65-10(4) (quoted in Zauderer, 378 F.Supp.2d at 687-88, and Lee, 352 S.C. at 91, 572 S.E.2d at 303). The New Jersey and South Carolina statutes require that, to be a "sales representative" entitled to additional damages under the Sales Representative's Commission Act, a salesman must makeno sales to the ultimate consumer. See AmericanDelta, 276 N.J.Super. at 288, 647 A.2d at 1347 (stating that "[t]he Act applies only to wholesale sales and wholesale orders" (emphasis added)). See also M.S. KindAssocs., Inc. v. Mark Evan Prods., Inc.,222 Ill.App.3d 448, 450, 584 N.E.2d 180, 181, 165 Ill.Dec. 1, 2 (1991) (stating that "[t]he General Assembly has patently found it desirable to promulgate the statute at issue here in order to protect commissioned sales representatives who solicitwholesale orders only, who do not sell to the ultimate consumer" (first emphasis in original; second emphasis added)). Because salesmen in Illinois, New Jersey, and South Carolina must engage only in wholesale transactions to be considered "sales representatives" and to be eligible for additional damages under their respective Sales Representative's Commission Acts, we do not consider the decisions from those jurisdictions persuasive. The Missouri decision cited by RMC, however, is instructive.
The trial court erred by deciding that the applicability of the Act was a *Page 883 
question of fact. Whether the Act applied to the undisputed facts was a question of law — one that a Missouri court, faced with similar facts and construing a statute virtually identical to the Alabama Act, answered by determining that the penalty provisions of a Sales Representative's Commission Act are not triggered unless the sale in question is a wholesale transaction. See Hoffman v. Van Pak Corp., supra.
In Hoffman, a salesman sought damages under the Missouri Sales Representative's Commission Act when the company for which he worked failed to make timely payments of commissions after he had resigned. The evidence established that the company custom-manufactured electrical-control systems according to individual customer's specifications. Although the company "sold parts . . . to the aftermarket, which, its officers testified, were wholesale sales that constituted less than one percent of its business," the company's sales were primarily to end users. 16 S.W.3d at 686. The Missouri court affirmed a judgment denying the salesman statutory damages, holding that the evidence was sufficient to support the trial court's finding that the company was not a "principal" within the meaning of the statute because the corporation did not "manufacture . . . a product for wholesale." 16 S.W.3d at 689.
The statute at issue in Hoffman contained definitions of "principal" and "sales representative" that are nearly identical to the definitions in § 8-24-1(2) and -1(3), Ala. Code 1975. The Missouri statute defined "principal" as one who:
 "(a) Manufactures, produces, imports, or distributes a product for wholesale.
 "(b) Contracts with a sales representative to solicit orders for the product; and
 "(c) Compensates the sales representative, in whole or in part, by commission."
Mo.Rev.Stat. § 407.911(2) (quoted in Hoffman,16 S.W.3d at 688).[1]
We acknowledge that the definition of "principal" in the Alabama Act does not use the word "wholesale" as the Missouri statute at issue in Hoffman did. Instead, the Alabama Act provides that a principal is one who "[e]ngages in the business of manufacturing, producing, importing, or distributing a product or products for sale to customers who purchase theproduct or products for resale." § 8-24-1(2) (emphasis added). The plain and ordinary meaning of the word "wholesale," however, denotes the sale of a product for resale. SeeHoffman, 16 S.W.3d at 688-89. Given the undisputed facts of the sales transaction at issue in this case — that RMC, through Beasley, sold a product to Stone Container as an end user and not as a "customer who purchase[d] the product . . . for resale" — any difference between the wording of the definition of "principal" in the Alabama Act and the wording of the definition in the Missouri statute at issue inHoffman is immaterial.
The Missouri statute defined "sales representative" as
 "a person who contracts with a principal to solicit wholesale orders and who is compensated, in whole or in part, by commission, but shall not include one who places orders or purchases for his own account for resale." *Page 884 
Mo.Rev.Stat. § 407.911(3) (quoted in Hoffman,16 S.W.3d at 688).[2] The salesman in Hoffman made an argument similar to the argument Beasley made to the trial court and now reasserts on appeal in the present case. InHoffman, the salesman argued "that there is no good reason for restricting the application of the sta tute based on `semantics' and that, as a commissioned salesman, the statute should apply to him." 16 S.W.3d at 689. The Missouri court responded:
 "[The Sales Representative's Commission Act] provides for additional monetary damages, in addition to actual damages, for the untimely payment of commissions. Statutes imposing penalties must be strictly construed. The statute uses the word `wholesale' in defining both `principal' and `sales representative.' We presume that the legislature did not insert idle verbiage or superfluous language in the statute. Each word, clause, sentence, and section of a statute should be given meaning."
16 S.W.3d at 689 (internal citations omitted). Seegenerally Cox v. Microsoft Corp., 290 A.D.2d 206, 207,737 N.Y.S.2d 1, 2-3 (2002) (stating that "[i]t has long been recognized that a provision for the trebling of damages is penal and subject to strict construction"); Johnson v. HyundaiMotor America, 698 A.2d 631, 639 (Pa.Super.Ct. 1997) (holding that the imposition of exemplary or treble damages is essentially punitive in nature and subject to strict construction); and 22 Am.Jur.2d Damages § 618 (2005) ("[c]ourts that treat statutes providing for double or treble damages as penal laws hold that they must be strictly construed and that multiple damages may be awarded only when expressly authorized by statute" (footnotes omitted)).
Because the transaction at issue on this appeal was a sale to an end user, RMC was not a "principal" and Beasley was not a "sales representative" within the meaning of the Alabama Act. The judgment of the Mobile Circuit Court is reversed, and the cause is remanded with instructions to vacate the award of treble damages, attorney's fees, and costs in favor of Beasley.
The appellee's motion to strike is denied.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, PITTMAN, MURDOCK, and BRYAN, JJ., concur.
[1] Section 407.911 was amended in 2005; as amended, it no longer applies solely to wholesale transactions.
[2] See note 1, supra.